FILED

2007 MAR 29 P 2: 20

U.S. DISTRICT COURT
BRIDGEPORT CONN

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

HALO TECHNOLOGY
HOLDINGS, INC. f/k/a
WARP TECHNOLOGY
HOLDINGS, INC.

                             :

                             : CIVIL ACTION

VS.

**307CV 489 AHN**

RANDALL COOPER, LYNN FRAAS,
STEVEN GARRETT, STEVEN PAYNE,
CROFT & BENDER, LLC, PRIMUS
VENTURE PARTNERS, INC., PRIMUS
CAPITAL FUND LIMITED PARTNERSHIP
V, LLC, PRIMUS VENTURE PARTNERS
V, LLC, JONATHAN E. DICK, PHILLIP
C. MOLNER, PRIMUS VENTURE
PARTNERS                  : March 28, 2007

## COMPLAINT

### PARTIES AND JURISDICTION

      1.   The Plaintiff Halo Technology Holdings, Inc.,

known before change of name as Warp Technology Holdings, Inc.,

is a Nevada corporation with its principal place of business

in Greenwich, Connecticut.

2.   The principal business of the Plaintiff is the acquisition, management and sale of software companies: i.e. companies which develop, sell and/or license software for commercial application.

3.   Defendant Randall Cooper is a resident of Snelville, Georgia.  At all times relevant hereto Cooper was employed by the Plaintiff to act as Chief Executive Officer of the "human resources software and solution sphere in the company."  Plaintiff's "human resources software and solutions sphere" consists virtually entirely of Plaintiff's sole ownership of a company named Empagio, Inc.  As more fully set forth herein, Empagio, Inc. is a company which was constituted by Plaintiff's acquisition and subsequent merger of three separate companies which were in the business of developing, selling and licensing software for human resource departments.

4.   The Defendant Lynn Fraas is a resident of Barlette, Illinois and at all times relevant hereto was an employee of Empagio, Inc., a wholly-owned subsidiary of the Plaintiff.

2

5.   The Defendant Steven Payne is a resident of Woodstock, Georgia, and at all times relevant hereto was an employee of Empagio, Inc. a wholly-owned subsidiary of the Plaintiff.

6.   The Defendant Steven Garrett is a resident of Marietta, Georgia and at all times relevant hereto was an employee of Empagio, Inc., a wholly-owned subsidiary of the Palintiff.

7.   The Defendant Primus Venture Partners, Inc. is a business organization with its principal place of business located in Cleveland, Ohio;

8.   The Defendant Primus Capital Fund Limited Partnership V, LLC purports to be a business organization with its principal place of business in Cleveland, Ohio;

9.   The Defendant Primus Venture Partners V, LLC is a business organization with its principal place of business located in Cleveland, Ohio.  Primus Venture Partners V, LLC represents itself as the general partner of the Defendant Primus Capital Fund Limited Partnership V, LLC;

3

10.  The Defendant Jonathan E. Dick is a resident of the State of Ohio and represents himself to be a "managing director" of Primus Venture Partners V, LLC.

11.  The Defendant Phillip C. Molner is a resident of the State of Ohio and represents himself to the a "managing director" of Primus Venture Partners V, LLC.

12.  The Defendant Primus Venture Partner purports to be a business entity with its principal place of business located in Cleveland, Ohio and the Defendant Phillip C. Molner represents himself as a "managing director" of Primus Venture Partners.

13.  The Defendants Primus Venture Partners, Inc., Primus Capital Fund Limited Partnership V, LLC, Primus Venture Partners V, LLC, Primus Venture Partners, Phillip Mollner and Jonathan E. Dick (hereinafter collectively referred to as "the Primus Group" are engaged in the private equity business.  As such, the Primus Group identifies and provides funds the acquisition of corporate entities which are deemed to be valuable opportunities.

4

14.   The Defendant Croft & Bender, LLC is a limited liability company with its principal office in Atlanta, Georgia.

15.   Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. Sec. 1332 et seq, with an amount in controversy in excess of $75,000.   Venue is appropriate in this district  because the conduct complained of arises out of breaches of fiduciary duties owed to the Plaintiff by the Defendants, both directly and indirectly; in that the conduct complained of surrounds tortious interference with prospective or actual contractual relationships owed the Plaintiff, the conduct complained of consists of improper and tortious attempts to coerce Plaintiff to sell certain shares of stock owned by Plaintiff by engaging in misconduct causing damage within the State of Connecticut, and acts constituting unfair and deceptive trade practices causing an ascertainable loss within the State of Connecticut.

5

FIRST COUNT

VIOLATION OF GEN. STAT. SEC. 42-110a et seq

16.   On or about January 13, 2006 the Plaintiff acquired one hundred percent of the issued and outstanding shares of a company known as Empagio, Inc., the principal place of business of which was Atlanta, Georgia.  Empagio was the developer and licensor of certain software useful to human resource departments for medium to large companies.  The Defendant Cooper was a principal in Empagio.

17.   Prior thereto, the Plaintiff had acquired all of the issued and outstanding shares of stock in two additional corporations, the first being Tesseract, Inc., a corporation with its principal place of business in San Francisco, California.  The second company acquired by Plaintiff was Executive Consultants, Inc., the principal place of business was Pittsburgh, Pennsylvnia.  The primary business of both Tesseract and Executive Consultants was the development, sale and licensing of software for human resource departments.

6

18. Plaintiff caused Empagio, Teseract and Executive Consultants to be merged into a single company known as Empagio, Inc.

19. The annual revenues of the newly-constituted Empagio were substantially greater than the revenues of the original Empagio.

20. On or about January 13, 2006 the Defendant Cooper became an employee of the Plaintiff by virtue of a written employment agreement between Plaintiff and Cooper. Said employment agreement was for an initial term of two (2) years and subsequent one year terms if the terms of such additional employment were mutually agreed upon by Plaintiff and Defendant. Pursuant to said agreement, Defendant Cooper became the Chief Executive Officer of Plaintiff's "human resources software and solutions sphere of" the Plaintiff. Defendant Cooper was obligated to devote full time to his employment duties and was paid an annual salary of $225,000 plus a bonus and other perquisites.

21. During the Summer of 2006, Plaintiff was

7

advised that the value of Empagio, Inc., as constituted subsequent to its merger from three companies, had substantial worth. Accordingly, the Plaintiff hired an investment banker to explore selling Empagio. The anticipated sales price for Empagio was not less than thirty million ($30,000,000) dollars.

22. During the Summer and Fall of 2006, defendant Cooper was obligated to attend various meetings on behalf of plaintiff as its representative.

23. During the Summer and Fall of 2006, Cooper began to undermine Plaintiff's efforts to sell Empagio by falsely stating that he personally had a right of first refusal to purchase Empagio, and that he intended to purchase Empagio himself.

24. As a consequence of his informing potential buyers and other interested parties that he had a personal interest in Empagio by virtue of a right of first refusal, prospective buyers failed to submit bids to plaintiff to purchase Empagio.

8

25.    During the course of his representation of Plaintiff in its sales efforts, Defendant Cooper also informed potential buyers that if Empagio was sold to other persons or entities other than Cooper and his "group"- which "group" included the Defendants Fraas, Garrett and Payne- that certain large clients of Empagio would not renew their licensing agreements with Empagio.   Such conduct directly diminished interest in the purchase of Empagio by third parties.

26.    In the Fall of 2006 Defendants Cooper, Fraas, Garrett and Payne (hereinafter "the Cooper group") engaged the Defendant Croft & Bender as investment bankers to assist the Cooper group in personally purchasing Empagio.

27.    The efforts by Cooper, as previously set forth and as hereinafter set forth, to personally acquire Empagio at a discounted price, and to block, interfere with and otherwise inhibit Plaintiff from selling Empagio to anyone other than Cooper and the Cooper group, constitute self dealing in a fiduciary capacity and a breach of fiduciary duty by Cooper.

28.    During the Fall of 2006, and at all times

9

thereafter, defendant Croft Bender were aware that Cooper was an employee of Plaintiff whose responsibility was the overall management of Empagio, was aware that Cooper was attempting to personally purchase Empagio and was aware that Cooper was engaging in self dealing in a fiduciary capacity.

29. During the Fall of 2006 the Defendant Cooper group, and all of them, and the Defendant Croft & Bender, combined to hire the Primus group to furnish financing for the Cooper group . Such services by Croft & Bender and the Cooper group in locating financing for the Cooper group constituted critical and substantial assistance to the Cooper group in its efforts to assist Cooper in his self dealing at the expense of the Plaintiff.

30. In conjunction with the hiring of Croft & Bender, Cooper disclosed to Croft & Bender massive confidential material which was the property of Plaintiff and its subsidiary. The disclosure by Cooper of such confidential information was wrongful in that it both violated his written contract with Plaintiff and constituted a breach of fiduciary

10

duty of loyalty owed to Plaintiff.

31.   In turn, the Defendant Croft & Bender improperly disclosed such confidential information to various potential financial backers, including the Primus group. Such improper disclosure was known by Croft & Bender to have been furnished by Cooper and that Cooper owed fundamental fiduciary duties to Plaintiff.

32.   During the Fall of 2006, Plaintiff's investment banker began to discover that the Cooper group and Croft & Bender were already engaged in independently attempting to find a buyer for Empagio, and that the Cooper group and Croft & Bender had informed such buyers that Cooper had a right of first refusal.

33.   During the Fall of 2006 the Plaintiff's efforts to sell Empagio were not successful. Defendant Cooper was aware of the lack of success because he was the Chief Executive Officer of Plaintiff with respect to Empagio, because he had himself undermined the sale by Plaintiff, and because he was privy to all information regarding the sale of

11

Empagio in his capacity as Chief Executive Officer.

34.  On January 11, 2007, Defendants Cooper, Fraas, Payne, Garrett, Croft & Bender and the Primus group issued a letter of intent to purchase Empagio for $17 million.  At the time, Plaintiff was unaware of the extent of the self dealing in which the Defendant Cooper had been engaged.

35.  Plaintiff permitted Defendants to explore the sale of Empagio with the Defendants because it was unaware of the extent of disloyalty and misconduct by Defendant Cooper, and because it had no other prospects to purchase Empagio.

36.  The letter of intent executed by the Plaintiff allowed the Defendants an exclusive right to explore the purchase of Empagio until February 28, 2007 and during that period of exclusivity Plaintiff was obligated to not engage in discussions with parties other than the Defendants.

37.  Subsequent to the execution of the letter of intent on January 11, 2006, the Cooper group engaged in further misconduct in order to drive down the price of Empagio and to force Plaintiff to sell Empagio for the lowest possible

12

price:

a.   Cooper instructed employees of Empagio not to invoice certain Empagio customers, including Burlington Northern, notwithstanding that the amounts were due.  The effect of such reduction in Empagio's cash flow would also serve to reduce the purchase price to the Cooper group even below the price indicated in the letter of intent;

b.   The Cooper group wrongfully disclosed to other customers that it was purchasing Empagio and encouraging such customers to deal with the Cooper group, not management of Empagio;

c.   During the first week of February, the Cooper group and the Primus group began dealing with Empagio customers in order to change the pricing of license agreements for their own benefit;

d.   During the period of exclusivity, all or some of the Defendants began to contact Plaintiff's primary lender, wrongly disclosing that they were purchasing Empagio and attempting to undermine Plaintiff's status with its lender and

13

to invite Plaintiff's lender to call a default in Plaintiff's debt to lender, all in order to further increase the likelihood that the Cooper group would personally achieve an advantageous purchase price.

38.   At the end of the exclusivity period, the Cooper group, with the assistance of Croft & Bender and the Primus group, made an offer to purchase Empagio for $14.5 million, less than the original amount of its letter of intent, and after Defendants had jointly and severally made a concerted effort to diminish the value of Empagio in violation of fundamental fiduciary duty of loyalty and a prohibition against self dealing.

39.   The Plaintiff rejected the offer by the Defendants.

40. On March 9, 2007 Plaintiff decided to enter into a letter agreement with another buyer, Silver Oak, pursuant to which Silver Oak would purchase 90% of Empagio for $15 million.  When Cooper was informed that Plaintiff had entered into the agreement with Silver Oak, Cooper responded by

14

informing Plaintiff that events would promptly transpire which would cause Silver Oak to cease its efforts to purchase Empagio.

41. On March 12, 2007, a group of Empagio employees wrote Silver Oak stating that they would not stay with Empagio if Silver Oak purchased it.

42. On March 12, 2007 Defendant Garrett informed Plaintiff that the Cooper group would not cooperate with the due diligence efforts by Silver Oak.

43. On March 12, 2007, Cooper was fired by Empagio for cause. On March 14, 2007 Garrett was fired by Empagio for cause.

44. After being fired for cause, Cooper called Plaintiff's lender and told it that he had been fired but that his group would be interested in buying Empagio if Plaintiff's lender would impose financial pressure on Plaintiff.

45. On March 26, 2007, Cooper informed Plaintiff's lender that his group had raised its offer to purchase Empagio notwithstanding that plaintiff was contractually bound with

15

Silver Oak to not negotiate with other parties.

46.    All of the foregoing conduct was performed jointly, severally and in concert by all Defendants all of which were aware that Cooper was engaging in misconduct as a fiduciary.

47.    All the Defendants were attempting to capitalize on Cooper's position of trust and confidence as a fiduciary for Plaintiff in order to obtain a special benefit for Cooper personally and for themselves personally.

48. All of the Defendants engaged in unscrupulous, deceptive and unfair trade practices within the meaning of Gen Stat Sec 32-110 a et seq.

49.    The Plaintiff has suffered an ascertainable loss as a result of the Defendants conduct.   Such loss includes, but is not limited to, a loss of a substantial opportunity to realize a profit in its acquisition and subsequent sale of Empagio and its constituent companies, it has experienced a loss of cash flow and its business expectations, it has paid the Cooper group salary and other

16

benefits while they engaged in self dealing and misconduct.

SECOND COUNT: BREACH OF FIDUCIARY DUTY

1-47.   Paragraphs 1 through 47 of the First Count are hereby made paragraphs 1 though 47 of the Second Count.

48.   The conduct of the Cooper group, including Defendants Cooper, Fraas, Garrett and Payne, constitute breaches of fiduciary duty, including self dealing in a fiduciary capacity as well as breach of duty of loyalty.

49.   As a consequence, Defendants Cooper, Fraas, Garrett and Payne are liable for the consequences of their self dealing and have forfeited the right to compensation for their period of disloyalty,

THIRD COUNT: TORTIOUS INTERFERENCE WITH FIDUCIARY RELATIONS

1-47.   Paragraphs 1 through 47 of the First Count are hereby made paragraphs 1 through 47 of the Second Count.

48.   Defendants Primus group, and all of them, as well as Defendant Croft & Bender, were at all times aware that Cooper was a fiduciary of the Plaintiff and that Cooper was

17

using information and influence obtained in his capacity as fiduciary, to obtain an advantageous personal financial advantage over Cooper's principal, the Plaintiff. That such conduct constituted self dealing by Cooper was obvious to all other parties to this lawsuit.

49. Defendants Primus group, and all of them, as well as Defendant Croft & Bender, with knowledge that such conduct was improper, and without privilege, purposely acted to assist and procure the Defendant Cooper in his breach of fiduciary duty.

50. The conduct of the Primus group, and all of them, as well as Defendant Croft & Bender, constituted knowing participation with, and substantial assistance to, the foregoing breach of fiduciary duty by Cooper.

51. The Plaintiff has been damages as a proximate cause of the conduct of all of the defendants. The Plaintiff claims a trial by jury.

18

WHEREFORE, THE PLAINTIFF CLAIMS:

AS TO COUNT ONE:

a.  Compensatory damages;

b.  Punitive damages;

c.  Attorneys' fees;

d.  Costs, including expert witness and other fees;

e.  Such other damages as are consistent with Gen

Stat Sec 42-100a;

AS TO COUNT TWO:

a.  Compensatory damages;

b.  Punitive damages by way of attorneys' fees.

c.  Such other equitable relief as is appropriate.

AS TO COUNT THREE:

a.  Compensatory damages;

b.  Punitive damages by way of attorneys' fees; and

c.  Such other equitable relief as is appropriate.

19

_[signature]_

David M. Wallman Ct 068719
Wallman Law Firm, LLC
184 Atlantic Street
Stamford, CT 06901
203-348 4000
203 406 0587 (fax)
dmw@business-litigation.net


## CERTIFICATION

        Pursuant to statute, this is to certify that a copy
of the foregoing was mailed to:

        Honorable Richard Blumenthal
        Attorney General
        State of Connecticut
        55 Elm Street
        Hartford, CT 06108


_[signature]_

David M. Wallman


20